IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOSEPH J. MUNGER, SR.**, <br><br> Plaintiff, <br><br> v. <br><br> **CASCADE STEEL ROLLING MILLS, INC.**, <br><br> Defendant. | Case No. 3:18-cv-970-SI <br><br> **OPINION AND ORDER** |

Benjamin Rosenthal, 1023 SW Yamhill Street, Suite 200, Portland, OR 97205. Of Attorneys for Plaintiff.

Anthony D. Kuchulis and Chris M. Morgan, BARRAN LIEBMAN LLP, 601 SW Second Avenue, Suite 2300, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff, Joseph J. Munger, Sr. ("Munger"), formerly was employed by Defendant, Cascade Steel Rolling Mills, Inc. ("Cascade"). After Cascade terminated Munger's employment based on asserted violations of its attendance policy, Munger filed a grievance with his union, challenging Cascade's employment action. Munger's union grieved his challenge under the collective bargaining agreement between Cascade and the union, requiring the parties to engage in binding arbitration. After a hearing, the arbitrator ruled in favor of Cascade, finding that

PAGE 1 – OPINION AND ORDER

Cascade had just cause to terminate Munger's employment and dismissing Munger's grievance. Munger then filed this lawsuit in federal court. Cascade moves to dismiss solely under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that Munger lacks standing thus depriving this Court of subject matter jurisdiction. Cascade reserves all other defenses for another time. For the reasons that follow, the Court denies Cascade's motion to dismiss for lack of subject matter jurisdiction.

## STANDARDS

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). A court must presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss for lack of subject matter jurisdiction, "because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Thus, an objection that a court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Further, the Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter

jurisdiction is based on the assertion that the allegations in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997) (citation and quotation marks omitted).

## BACKGROUND

Cascade employed Munger from February 2, 1993, through June 2, 2016, most recently as a crane operator. Munger alleges that he requested medical leave for September 21-23, 2015, October 5-9, 2015, and May 25-26, 2016. Munger also alleges that Cascade wrongfully treated his absences on those dates as non-medical events. Munger adds that Cascade wrongfully suspended Munger on October 26, 2015, and wrongfully terminated his employment on June 2, 2016. In this lawsuit, Munger asserts claims alleging retaliation and discrimination in violation of the federal Family and Medical Leave Act ("FMLA"), the Oregon Family Leave Act, and the Oregon Sick Time Leave Act. Munger also alleges common law wrongful discharge.

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, for and on behalf of Local Union 8378 (the

"Union") and Cascade are parties to a Collective Bargaining Agreement ("CBA").[1] Among other things, the CBA states: "It is agreed that the Company [Cascade] and the Union shall comply with all the appropriate state and federal statutes dealing with discrimination." CBA, § 3.2. The CBA also contains, in Article 28, a process for the adjustment of grievances. The preamble to that article provides:

> Should any dispute arise between the Company and the Union *or the employees represented by the Union* during the term of this Agreement, there shall be no interruption of work at any time but *the matter shall be settled in accordance with the following provisions*.

CBA, § 28.1 (emphasis added). Article 28 continues by describing the grievance adjustment process, including, ultimately, arbitration. The CBA also states: "The award of the arbitrator shall be final and binding on all parties." CBA, § 28.3(D).

While employed by Cascade, Munger was represented by the Union. After the termination of his employment, Munger filed a grievance, challenging his discharge under Cascade's "modified strict attendance policy." The Union grieved Munger's challenge through arbitration. The arbitrator held hearings on March 23, 2017, and April 20, 2017. Both Cascade and the Union were represented, and Munger participated as a witness for the Union. The parties agree that the issue presented in arbitration was whether Cascade had "just cause to terminate Joe Munger, and if not, what is the appropriate remedy." Cascade and the Union each submitted a post-hearing brief to the arbitrator. On July 7, 2017, the arbitrator issued a 15-page decision, concluding that Cascade had "just cause" to terminate Munger's employment and dismissing Munger's grievance. Eleven months later, Munger filed the pending lawsuit in federal court.

---

[1] The CBA submitted by Cascade became effective April 1, 2016, but appears to be a continuation of an earlier collective bargaining agreement between the Union and Cascade.

**DISCUSSION**

Cascade moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting two arguments. First, Cascade states that Munger lacks standing because he does not contend that the Union breached its duty of fair representation or that there was anything improper about the arbitration process or decision. Second, Cascade states that the Court lacks subject matter jurisdiction because there was a final and binding arbitration decision on the same facts that underlie Munger's claims in this lawsuit. Cascade adds that it is not currently asserting the defenses of claim preclusion (also known as "*res judicata*") or issue preclusion (also known as "collateral estoppel") and is not moving for summary judgment to enforce the arbitrator's decision. Cascade also requests its attorney's fees under "federal common law."

**A. Standing**

The U.S. Constitution confers limited jurisdiction on the federal courts to hear only cases or controversies brought by persons who show standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id*. at 1547. To have standing in this constitutional sense, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. Munger has alleged that he has suffered an injury in fact when Cascade wrongfully terminated Munger's employment, that his injury is fairly traceable to the challenged conduct of Cascade, and that his injury will be redressed if he were to receive a favorable judicial decision in this lawsuit. Thus, Munger has constitutional standing.

Although Article III's injury requirement cannot be displaced by statute, when a statute creates a legal right, the invasion of that legal right may create standing. *Spokeo*, 136 S. Ct. at 1549 (noting that Congress "has the power to define injuries and articulate chains of causation

that will give rise to a case or controversy where none existed before"); *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (noting that standing can exist through "statutes creating legal rights, the invasion of which creates standing"). This sometimes is called "statutory standing." Because the FMLA protects employees against discrimination or retaliation by their employers based on taking qualified family or medical leave, Munger has statutory standing under the FMLA.[2]

In support of its argument that Munger lacks standing, Defendant states:

> Absent proof that a union has breached its duty of fair representation, a plaintiff does not have standing to bring a subsequent suit in federal court where there was a previous binding arbitration decision made in the context of a collective bargaining agreement. *See, e.g., Andrus v. Convoy Co.*, 480 F.2d 604 (9th Cir. 1973); *Anderson v. Norfolk & W.R. Co.*, 773 F.2d 880 (7th Cir. 1985) (individual employees have no standing to challenge an arbitration proceeding to which the union and the employer were the sole parties).

Defendant's Motion to Dismiss at 4. Defendant misapplies these cases.

In *Andrus*, union members sued their present and former employers, seeking to overturn an arbitrator's decision that rejected the members' seniority grievances presented to an arbitrator by the union under a collective bargaining agreement. The union members sought declaratory relief and an order vacating the arbitrator's award. The union members did not allege that they were not fairly represented by their union. The district court entered judgment for the defendant employers, and the Ninth Circuit affirmed, stating: "the employees cannot attack the final award, except on the grounds of fraud, deceit or breach of the duty of fair representation or unless the grievance procedure was a sham, substantially inadequate or substantially unavailable." *Andrus*

---

[2] Moreover, whether a plaintiff has stated a basis for statutory standing is not jurisdictional and is tested under Rule 12(b)(6), rather than Rule 12(b)(1). *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4; *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

v. *Convoy Co.*, 480 F.2d at 606 (quoting *Harris v. Chem. Leaman Tank Lines, Inc.*, 437 F.2d 167, 171 (5th Cir. 1971)) (quotation marks omitted). In the pending case, however, Munger is seeking neither a declaration invalidating the arbitrator's decision nor an order vacating that decision.

Similarly, in *Anderson*, a group of railroad employees filed a complaint in federal court against the defendant railroad, seeking to vacate one arbitration award and enforce another relating to an arbitration conducted between the railroad and a union. After a merger of two railroads, the Interstate Commerce Commission required the resulting railroad to negotiate with a labor union representing the railroad's employees. When negotiations failed, the railroad and the union agreed to arbitration. The arbitrator issued his first decision in December 1981, resolving some issues, but returning others for further negotiation. A tentative resolution was accepted by many, but not all, of the affected union locals. The tentative resolution was presented to the arbitrator, who approved it in March 1982 as his final, binding award.

Several employees then sued, asking the district court to vacate the arbitrator's 1982 award and confirm only the arbitrator's 1981 award. The district court granted summary judgment to the defendant railroad. The Seventh Circuit held that the "plaintiffs do not have standing in this matter. Plaintiffs have cited no cases to us that allow persons not parties to the original proceeding to appeal the outcome of that proceeding. In analogous cases, courts have held that individual employees have no standing to challenge an arbitration proceeding to which the Union and the employer were the *sole* parties." *Anderson*, 773 F.2d at 882 (emphasis added). The Seventh Circuit remanded the case to the district court with instructions to vacate the order granting the defendant's motion for summary judgment and to dismiss the complaint for lack of jurisdiction. *Id*. at 883.

As stated previously, Munger is not asking the Court to either vacate or affirm an arbitration award in a proceeding between Cascade and the Union. Munger simply is bringing his own claims against Cascade for federal and state statutory and common law violations. The Court can envision that at some point in this case, Cascade may assert affirmative defenses based on claim preclusion (*res judicata*) or issue preclusion (collateral estoppel) that the Court will need to consider, but Cascade has expressly declined to seek that consideration at this time.

**B.  Subject Matter Jurisdiction**

Cascade also argues that this Court lacks subject matter jurisdiction. Typically, the two bases for subject matter jurisdiction are federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. This Court has federal question jurisdiction over Plaintiff's claim alleging a violation of FMLA and may exercise supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. § 1367. Defendant, however, argues that the CBA somehow divests this Court of subject matter jurisdiction because "Plaintiff and Defendant have previously entered into a valid agreement to litigate contract claims in another venue—in arbitration subject to the express terms and conditions of the CBA." Defendant's Motion to Dismiss at 6. Based on this argument, Cascade moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. In support, Cascade cites Rule 21(A)(1) of the *Oregon* Rules of Civil Procedure and *state* appellate cases from the Oregon Supreme Court and the Oregon Court of Appeals. In federal court, however, procedural issues, including the subject matter jurisdiction of the federal courts, are determined by federal law, not state law. *See generally Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

Some federal courts have allowed a motion to compel arbitration based on a valid and enforceable agreement to arbitrate to be brought under Rule 12(b)(1), asserting a lack of subject matter jurisdiction. This approach, however, is unsound. As noted, if a federal court lacks subject

matter jurisdiction, such a defect can never be waived. *United States v. Cotton*, 535 U.S. at 630. Yet, it is not uncommon, or at least not unthinkable, that parties to a mandatory arbitration agreement mutually decide to waive arbitration and pursue resolution of their dispute in federal court, assuming that either federal question or diversity jurisdiction otherwise exists. There is also a significant and consistent body of case law holding that if a party, whether a plaintiff or a defendant, continues in a lawsuit long enough and takes advantage of the procedural benefits of civil litigation, that party may be found to have waived its right to stay or dismiss the lawsuit in favor of arbitration, despite the existence of a valid and binding agreement to arbitrate. *See, e.g., Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (holding that defendants had waived their right to arbitrate after spending seventeen months litigating the case); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (holding that a party had waived its right to arbitrate when it answered complaints, moved to dismiss the action, and did not assert in its pleadings a right to arbitrate). If, however, the existence of an agreement to arbitrate divested a federal court of subject matter jurisdiction, these holdings would not be possible.

Consider also the case of two parties who have a binding agreement to arbitrate. If, despite their agreement to arbitrate, they participated in a lawsuit to its final conclusion at trial, the losing party might appeal and, on appeal, argue that the lower court's adverse judgment should be reversed and vacated based on a lack of subject matter jurisdiction. *See Arbaugh*, 546 U.S. at 506 (holding that an objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time). One response to this possibility would be to say that litigating a dispute in court notwithstanding an agreement to arbitrate is an implicit "termination" of the agreement. But if there mere existence of an agreement to arbitrate divests a federal court of subject matter jurisdiction, then such an implicit

termination of the agreement would appear to violate the rule that a court's lack of subject matter jurisdiction can never be waived.

Although the Ninth Circuit has not yet expressly ruled on whether a motion to dismiss based on a binding arbitration clause is subject to a motion brought under Rule 12(b)(1), other circuits and district courts have addressed this issue. *See City of Benkelman, NE v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017) (holding that a binding arbitration clause does not strip federal courts of jurisdiction and concluding that the district court erred in construing motion to enforce arbitration clause as a Rule 12(b)(1) challenge to subject matter jurisdiction); *Auto. Mech. Local 701 v. Vanguard Car Rental*, 502 F.3d 740, 743 (7th Cir. 2007) ("Enforcement of a forum selection clause (including an arbitration clause) is not jurisdictional. . . ."); *Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 822 F. Supp. 2d 896, 904-05 n.10 (D. Minn. 2011) ("To dismiss a federal action for lack of subject matter jurisdiction *because* the dispute is subject to a binding arbitration agreement mistakenly assumes that an arbitrable dispute, by definition, falls outside the realm of federal jurisdiction. Moreover, the fact that the parties have contractually agreed to resolve any particular dispute by arbitration says nothing about whether that dispute would satisfy federal question, diversity or any other basis of subject matter jurisdiction.") (emphasis in original); *but see Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014) ("[A] district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration."). Without further direction from the Ninth Circuit, I join the Seventh and Eighth Circuits and hold that enforcement of an arbitration clause is not jurisdictional and thus not properly the subject of a motion to dismiss under Rule 12(b)(1).

If two parties enter into a binding agreement to arbitrate and then one party begins a federal lawsuit in breach of that agreement, the other party must have some procedural vehicle available to dismiss or stay the litigation.[3] Just as the proper vehicle is not a motion to dismiss for lack of subject matter jurisdiction, it also is not a motion to dismiss for improper venue under Rule 12(b)(3). In *Atlantic Marine Construction Company v. U.S. District Court for the Western District of Texas*, the Supreme Court stated: "Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." 571 U.S. 49, 55 (2013). As the Eighth Circuit concluded based on *Atl. Marine*, "to the extent an arbitration provision is like a forum-selection clause, the motion seeking to compel arbitration is not properly construed under Rule 12(b)(3)." *City of Benkelman*, 867 F.3d at 880.

Similarly, a motion to dismiss under Rule 12(b)(6) for failure to state a claim does not appear to be a particularly viable solution. A plaintiff who brings a federal lawsuit, invoking either federal question or diversity jurisdiction, notwithstanding a binding agreement to arbitrate is unlikely to include, incorporate, or even refer to the arbitration clause. If the document

---

[3] The Federal Arbitration Act ("FAA"), for example, authorizes a party to an arbitration agreement subject to the FAA to petition a federal court in which an action is pending to "stay the trial of the action until such arbitration has been had. . . ." 9 U.S.C. § 3. The FAA also authorizes a party to petition "any United States district court which, save for such agreement, would have jurisdiction under title 28," for an order directing that the agreed-upon arbitration proceed. 9 U.S.C. § 4. In either situation, a motion could be styled simply as "Motion to Stay" or "Motion to Compel Arbitration." Cascade, however, does not seek either form of relief here because the arbitration from which it seeks to benefit has already occurred. Relatedly, Section 9 of the FAA allows a party to an arbitration to apply to a court "for an order confirming the award," and Sections 10 and 11 allow a party to an arbitration to apply to a court for an order "vacating the award" or "modifying or correcting the award." 9 U.S.C. §§ 9-11. Similarly, that is not what Cascade seeks.

containing an agreement to arbitrate is not otherwise incorporated into the complaint,[4] then the defendant who seeks to rely on the arbitration agreement must present that agreement as a matter outside the pleadings. In that event, however, a motion to dismiss would be improper and, if the outside material is not stricken, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

That leaves a motion for summary judgment under Rule 56 as the best vehicle to enforce a valid and binding arbitration clause, and this is not a particularly harsh result. When a party files such a motion, the court can determine whether there are any genuine disputes of material fact sufficient to question the binding and enforceable nature of the agreement to arbitrate.[5] In light of the court's authority under Rules 16, 26, and 56 to control the nature, extent, and timing of discovery and other motion practice in civil litigation, the court can effectively and efficiently resolve by summary judgment a dispute over whether to enforce a purportedly binding agreement to arbitrate. Until either the Ninth Circuit or the Supreme Court addresses this issue further, or until there is an amendment to the rules, this approach seems best, at least to this Court. As stated, however, Cascade has expressly declined to move for summary judgment at

---

[4] There may be circumstances, such as in a diversity case alleging breach of contract, when the plaintiff's reference to the contract will be sufficient to incorporate the entire agreement without converting the motion to dismiss to a motion for summary judgment, even if the plaintiff did not attach it to its complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"). *See generally Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-1005 (9th Cir. 2018).

[5] Munger responds to Cascade's motion to dismiss by challenging the validity of the arbitration agreement as applied to his claim. Munger relies on *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009). In *Penn Plaza*, the Supreme Court held that a collective bargaining agreement that "clearly and unmistakably" requires union members to arbitrate specific claims is enforceable. *Id.* at 274. At some point in this lawsuit, this Court may need to rule on the enforceability against Munger of the arbitration agreement between Cascade and the Union. Because even a valid arbitration agreement would not divest the Court of subject matter jurisdiction, the Court need not address that issue at this time.

this time. Accordingly, Cascade's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is denied.

## CONCLUSION

Defendant Cascade Steel Rolling Mills, Inc.'s Motion to Dismiss (ECF 5) is DENIED.

**IT IS SO ORDERED**.

DATED this 18th day of September, 2018.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge
