IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH J. MUNGER, SR,

        Plaintiff,

v.

CASCADE STEEL ROLLING MILLS, INC,

        Defendant.

Case No. 3:18-cv-00970-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

        Plaintiff Joseph J. Munger ("Munger") brings this action against his former employer Cascade Steel Rolling Mills, Inc. ("Cascade"), alleging claims for violations of the Family Medical Leave Act ("FMLA"), the Oregon Family Leave Act ("OFLA"), the Oregon Sick Leave Act ("OSLA"), and wrongful discharge. (ECF No. 1.)

        Pending before the Court is Cascade's motion for summary judgment. (ECF No. 28.) The Court has jurisdiction over this case under 28 U.S.C. § 1331, and all parties have consented to the jurisdiction of a U.S. Magistrate Judge under 28 U.S.C. § 636(c). For the following reasons, the Court grants in part, and denies in part, Cascade's motion for summary judgment.

///

# BACKGROUND

For twenty-three years, Munger worked as a billet crane operator at Cascade's steel manufacturing facility in McMinnville, Oregon. (Compl. ¶¶ 4, 7-8.) Munger was a member of the United Steel, Paper and Forestry Rubber, Manufacturing, Energy, Allied Industrial and Service Worker's International Union, AFL-CIO, Local 8378 ("Union"). (Declaration of Anthony Kuchulis, Jan. 15, 2019 (hereinafter "Kuchulis Decl."), Ex. 1 at 29.)

On April 1, 2016, the Union and Cascade entered into a collective bargaining agreement ("CBA"). (Kuchulis Decl., Ex. 2 at 1.) The CBA recognized the Union as the exclusive collective bargaining representative for all of Cascade's employees at the McMinnville facility. (Kuchulis Decl., Ex. 2 at 1.) Under the CBA, Cascade retained the "right to hire, promote, demote, lay-off, discipline, suspend or discharge employees for just cause[.]" (Kuchulis Decl., Ex. 2 at 3.) The CBA provided that "any dispute" "between the Company [Cascade] and the Union or the employees represented by the Union during the term of this Agreement . . . shall be settled in accordance with" a three-step grievance process. (Kuchulis Decl., Ex. 2 at 48.)

If one party was not satisfied with the grievance process, the CBA allowed that party to request an arbitrator to settle the dispute. (Kuchulis Decl., Ex. 2 at 49.) The CBA identified the scope of the arbitrator's authority as follows:

Section 28.3: Arbitration

A. . . . The arbitrator shall have the sole right to determine the rules and procedures to be followed in the conduct of the arbitration hearing, and the arbitrator shall have authority to make decisions only with respect to the grievance and issue submitted and shall have no authority to modify, add to, alter or detract from the terms of any provisions of this Agreement.

…

D. The award of the arbitrator shall be final and binding on all parties.

(Kuchulis Decl., Ex. 2 at 49.)

PAGE 2 – OPINION AND ORDER

In September 2015 and again in May 2016, Munger requested leave for a medical condition. (Compl. ¶ 9.) Cascade suspended Munger on October 26, 2015, and terminated him on June 2, 2016. (Compl. ¶ 11.)

On June 9, 2016, the Union filed a grievance on Munger's behalf, alleging that Cascade fired Munger for exercising his FMLA and OFLA rights, not for just cause. (Kuchulis Decl., Ex. 8.) The parties first tried to resolve the dispute informally, but ultimately proceeded to arbitration on March 23, 2017 in accordance with the CBA. (Kuchulis Decl., Ex. 1.)

During the course of the arbitration proceeding, the parties offered opening statements, witness testimony, and post-hearing briefing. (Kuchulis Decl., Exs. 1, 10.) On July 7, 2017, the arbitrator issued a written ruling, noting that the parties "stipulate that the issue presented here is whether the Company [Cascade] had 'just cause to terminate Joe Munger.'" (Kuchulis Decl., Ex. 11 at 8.) The arbitrator concluded that Cascade "had just cause for [Munger's] termination, and the grievance must be dismissed." (Kuchulis Decl., Ex. 11 at 14.)

On June 1, 2018, Munger filed this case, alleging that Cascade interfered with his FMLA, OFLA, and OSLA rights, and wrongfully discharged him for taking medical leave. (ECF No. 1.) On July 5, 2018, Cascade filed a motion to dismiss for lack of subject matter jurisdiction, on the grounds that Munger lacks standing and the final and binding arbitration agreement divests the Court of subject matter jurisdiction over Munger's claims. (ECF No. 5.) On September 18, 2018, the Court denied Cascade's motion to dismiss. (ECF No. 15.) This motion followed. (ECF No. 28.)

## ANALYSIS

I.  **STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On a motion

PAGE 3 – OPINION AND ORDER

for summary judgment, courts must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citations omitted). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

**II.     DISCUSSION**

Cascade seeks summary judgment on all of Munger's claims on the ground that principles of issue preclusion, claim preclusion, and waiver bar Munger from relitigating the same issues the arbitrator already resolved. (Def.'s Mot. at 2.) The Court first addresses whether the arbitrator's decision precludes Munger from asserting his statutory claims in federal court.

**A.     Statutory Claims**

Cascade is correct that an "arbitration decision can have res judicata or collateral estoppel effect[.]" *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992) (citation omitted). However, the Supreme Court has made clear that an adverse arbitration decision on an employee's contract-based claims arising from a collective bargaining agreement does not preclude an employee from relitigating his statutory claims in federal court. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974).

In *Gardner-Denver*, the defendant terminated an employee subject to a collective bargaining agreement. The employee then filed a grievance with his union, claiming that he was "unjustly discharged" in violation of the "just cause" provision of the collective bargaining agreement. *Gardner-Denver*, 415 U.S. at 39. The employee's grievance went to arbitration, and during the arbitration hearing, the plaintiff "testified that his discharge was the result of racial

PAGE 4 – OPINION AND ORDER

discrimination[.]" *Id.* at 42. The arbitrator ultimately ruled that the employee "had been discharged for just cause" and "made no reference to" the employee's "claim of racial discrimination." *Id.*

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, the employee sued his former employer in federal court for race discrimination under Title VII of the Civil Rights Act of 1964. *Id.* The district court granted, and the Tenth Circuit affirmed, summary judgment for the employer because "the claim of racial discrimination had been submitted to the arbitrator and resolved adversely to" the employee, thereby precluding the employee from asserting a Title VII claim in federal court. *Id.* at 43.

On appeal, the Supreme Court reversed. The Court explained that the adverse arbitration decision did not preclude the employee from relitigating his statutory claims because an employee's contractual rights under a collective bargaining agreement are legally distinct from an employee's statutory rights:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

*Id.* at 49-50.

Furthermore, the Supreme Court held that an employee does not waive his statutory rights through "mere resort to the arbitral forum to enforce contractual rights" because "the arbitrator has authority to resolve only questions of contractual rights, and this authority remains regardless of whether certain contractual rights are similar to, or duplicative of, the substantive

rights secured by Title VII." *Id.* at 53-54.[1] The Court based its holding, in part, on its skepticism about the adequacy of arbitration proceedings in general: "[t]he record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." *Id.* at 57-58.

Cascade is correct that subsequent Supreme Court decisions have retreated from *Gardner-Denver*'s skepticism about arbitration as an appropriate forum to resolve statutory claims. First, in *Gilmer v. Interstate/Johnson Lane Corp.*, the Court upheld a compulsory arbitration provision in a non-collective bargaining agreement that required the plaintiff to arbitrate his claims under the Age Discrimination in Employment Act. 500 U.S. 20 (1991). The Court explained that *Gardner-Denver*'s "view that arbitration was inferior to the judicial process for resolving statutory claims" "has been undermined by our recent arbitration decisions." *Gilmer*, 500 U.S. at 34 n.5. Seven years later, in *Wright v. Universal Maritime Service Corp.*, the Court assumed without deciding that a collective bargaining agreement's arbitration clause may preclude an employee's statutory claims, but held that such a provision must be "clear and unmistakable." 525 U.S. 70, 80 (1998) (holding that "the right to a federal judicial forum is of sufficient importance to be protected against [a] less-than-explicit union waiver in a CBA").

///

---

[1] The Court noted that the "policy reasons for rejecting the doctrines of election of remedies and waiver in the context of Title VII are equally applicable to the doctrine of res judicata and collateral estoppel." *Gardner-Denver*, 415 U.S. at 49 n.10. The Court reaffirmed *Gardner-Denver*'s holding in two other cases shortly thereafter. *See McDonald v. City of West Branch*, 466 U.S. 284, 292 (1984) (concluding that an adverse arbitration decision made under a collective bargaining agreement did not preclude a discharged police officer from pursuing a Section 1983 claim in federal court); *Barrantine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 745 (1981) (finding that an adverse arbitration decision on the employee's wage claims under a collective bargaining agreement did not preclude the employee from bringing suit in federal court alleging a violation of the Fair Labor Standards Act based on the same underlying facts).

Most recently, in *14 Penn Plaza LLC v. Pyett*, the Supreme Court held that "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate" statutory claims is "enforceable as a matter of federal law." 556 U.S. 247, 274 (2009). *Penn Plaza* characterized *Gardner-Denver*'s criticism of "the use of arbitration for the vindication of statutory antidiscrimination rights" as "rest[ing] on a misconceived view of arbitration that this Court has since abandoned." *Penn Plaza*, 556 U.S. at 265. The Court, however, did not overrule *Gardner-Denver*'s core holding. *See Penn Plaza*, 556 U.S. at 264 n.8 (noting that its decision "does not contradict the holding of *Gardner-Denver*"). Rather, *Penn Plaza* clarified that the *Gardner-Denver* line of cases only resolved the issue of "whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims," and that *Gardner-Denver* did not apply when a collective bargaining agreement's "arbitration provision expressly covers both statutory and contractual discrimination claims." *Penn Plaza*, 556 U.S. at 264.

Following *Penn Plaza*, an adverse arbitration decision made under a collective bargaining agreement that requires arbitration of both contractual and statutory claims may preclude an employee from relitigating his statutory claims in federal court. However, to cover statutory claims, a collective bargaining agreement's arbitration provision must be "clear and unmistakable." *See Wright*, 525 U.S. at 80 ("We will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable.") (citation and alteration omitted). Circuit courts have recognized that a collective bargaining agreement's arbitration provision meets this high standard when it incorporates the statutes at issue or includes a clause that expressly refers to statutory claims. *See, e.g., Wawock v. CSI Elec. Contractors, Inc.*, 649 F. App'x 556, 558 (9th Cir. 2016) (holding that a collective bargaining

agreement that does not refer to statutory claims "necessarily falls short of an explicit statement" and that "[n]either historical practice nor the parties' unexpressed intent can fulfill [the clear and unmistakable] standard"); *Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 84 (2d Cir. 2016) (interpreting the "clear and unmistakable" standard "to require specific references in the CBA either to the statutes in question or to statutory causes of action generally"); *Ibarra v. UPS*, 695 F.3d 354, 356-60 (5th Cir. 2012) ("[C]ourts have concluded that for a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims.") (citations omitted); *Cavallaro v. UMass Memorial HealthCare, Inc.*, 678 F.3d 1, 7 n.7 (1st Cir. 2012) ("A broadly-worded arbitration clause . . . will not suffice; rather, something closer to specific enumeration of the statutory claims to be arbitrated is required.").

Turning to the text of the CBA, the Court finds that its arbitration provision does not clearly and unmistakably apply to Munger's statutory claims in this case.[2] The CBA's dispute resolution process applies to "any dispute" between Cascade and the Union "or the employees represented by the union during the term of this Agreement." (Kuchulis Decl., Ex. 2 at 49.) However, the CBA's arbitration provision does not expressly reference FMLA, OFLA, or OSLA. Nor does it expressly refer to statutory causes of action generally. Given that the CBA's

---

[2] Although *Gardner-Denver* and *Wright* analyzed federal antidiscrimination statutes, courts have applied *Gardner-Denver* and *Wright*'s holdings to FMLA actions and state statutory claims. *See Wawock*, 649 F. App'x at 558 (applying *Wright* in a FMLA action); *Gilbert v. Donahoe*, 751 F.3d 303, 307-10 (5th Cir. 2014) (same); *Sheridan v. Providence Health & Servs.—Oregon*, 3:10-cv-00775-PK, 2011 WL 13250762, at *12 (D. Or. Sept. 6, 2011) (applying *Gardner-Denver* to state statutory claims because Oregon courts have adopted *Gardner-Denver*'s holding); *Martinez v. J. Fletcher Creamer & Son, Inc.*, No. CV 10-0968 PSG (FMOx), 2010 WL 3359372, at *3 (C.D. Cal. Aug. 13, 2010) (applying *Gardner-Denver* and *Wright* to California statutory claims).

arbitration provision does not expressly incorporate Munger's statutory claims, the Court finds that the CBA does not satisfy the clear and unmistakable standard. *See Salas v. Anheuser-Busch Sales of South Bay, Inc.*, 650 F. App'x 445, 446 (9th Cir. 2016) (concluding that a collective bargaining agreement did not satisfy the "clear and unmistakable" standard where the collective bargaining agreement did not "explicitly incorporate" the plaintiff's statutory claims) (citing *Wright*, 525 U.S. at 80).

Cascade argues that Munger waived any objection to the scope of the CBA and the arbitrator's authority to decide statutory claims by submitting his grievance to arbitration and raising the same statutory claims he asserts in this case. (Def.'s Mot. at 14.) The Court disagrees.

As an initial matter, the record reflects that the only issue submitted to and resolved by the arbitrator was whether Cascade had just cause to terminate Munger. *See* Kuchulis Decl., Ex. 1 at 6 (noting that "[e]veryone agrees that the issue presented [at the arbitration hearing] is did the company have just cause to terminate Joe Munger"); *see also* Kuchulis Decl., Ex. 10 at 8 (indicating that the "parties agreed [that] the issue before the Arbitrator is whether the company [Cascade] had just cause to terminate Joe Munger"). But in any event, *Gardner-Denver* forecloses Cascade's waiver argument. *See Gardner-Denver*, 415 U.S. at 52 (concluding that "mere resort to the arbitral forum to enforce contractual rights constitutes no such waiver"); *see also Barrentine*, 450 U.S. at 734 (finding no waiver of the employee's right to assert his FLSA claim in federal court where the employee "knowingly and voluntarily submit[s] [a] grievance[] to arbitration under the terms of the agreement"); *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1206 (10th Cir. 2011) (noting that an employee's "submission to arbitration" operates as a waiver only "where the arbitration agreement expressly grants the arbitrator authority to decide statutory claims") (citations omitted). Consistent with *Gardner-Denver* and

*Penn Plaza*, the Court finds that the adverse arbitration decision does not preclude Munger from relitigating his statutory claims in federal court.

### B. Wrongful Discharge Claim

The Court turns next to whether Munger may bring a wrongful discharge claim in federal court following the adverse arbitration decision. *See Andrews v. May Dep't Stores*, 96 Or. App. 305, 313 (1989) (noting that Oregon courts have applied *Gardner-Denver*'s holding to state statutory claims, but not a "common law wrongful discharge claim").

"The tort of wrongful discharge is a narrow exception to th[e] general rule" that "an employer may discharge an employee at any time for any reason unless doing so violates a contractual, statutory, or constitutional requirement." *Davis v. Con-Way Freight Inc.*, 139 F. Supp. 3d 1224, 1237 (D. Or. 2015) (citations omitted). "The elements of a wrongful discharge claim are simple: there must be a discharge, and that discharge must be wrongful." *Id.* (citation and quotation marks omitted). "Oregon courts have recognized two circumstances that give rise to the common-law tort of wrongful discharge: (1) discharge for exercising a job-related right of important public interest and (2) discharge for complying with a public duty." *Id.* (citation omitted).

Munger alleges that Cascade discharged him for requesting medical or sick leave. (Compl. ¶ 37.) The Court finds that issue preclusion bars Munger's wrongful discharge claim.

Under Oregon law,[3] issue preclusion applies when (1) "the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits

---

[3] To determine the preclusive effect of an arbitration decision on a state law claim, courts apply the preclusion law of "the forum that rendered the arbitration judgment." *See St. Jude Medical S.C., Inc. v. Cormier*, 745 F.3d 325, 327 (8th Cir. 2014) (applying Florida law to determine the preclusive effect of an adverse arbitration decision on the plaintiff's state law claims).

in a prior proceeding; (3) the party sought to be precluded has had a full opportunity to be heard on that issue; and (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding." *Shuler v. Distrib. Trucking Co.*, 164 Or. App. 615, 625 (1999). Oregon courts give preclusive effect to arbitration decisions that meet this test. *See Shuler*, 164 Or. App. at 623 ("[W]hether, in principle, issue and claim preclusion apply to arbitration proceedings has not been seriously doubted for decades.").

In *Shuler*, a union truck driver "invoked the arbitration provision" of a collective bargaining agreement, alleging "that his suspension and discharge were wrongful and not for just cause." *Id.* at 617, 625. The issue presented at arbitration was "[w]hether plaintiff's suspension and discharge were for just cause in accordance with the collective bargaining agreement[.]" *Id.* at 625-26. After hearing all the evidence and considering the parties' post-hearing briefs, the arbitrator concluded that the employer's motive in terminating the employee "was not retaliatory, but rather based on work-related misconduct." *Id.* at 626. After the employee brought a subsequent wrongful discharge claim in state court, the Oregon Court of Appeals found that all of the elements of issue preclusion were "readily satisfied[.]" *Id.* at 625.

As in *Shuler*, the adverse arbitration decision here precludes Munger from asserting a wrongful discharge claim in federal court. The arbitrator resolved the issue that is central to Munger's wrongful discharge claim—whether Cascade terminated Munger for just cause. This issue "was essential to the arbitrator's final determination[.]" *Id.* at 626. Furthermore, Munger "does not contend that he had less than a full and fair opportunity to be heard on the issue, that he was inadequately represented in the arbitration, or that he did not have an incentive to litigate the issue below." *Id.* (citations omitted). Accordingly, the Court finds that the arbitrator's adverse decision bars Munger from asserting a wrongful discharge claim here.

## CONCLUSION

For the reasons stated, the Court GRANTS Cascade's motion for summary judgment on Munger's wrongful discharge claim, and DENIES Cascade's motion for summary judgment on Munger's statutory claims.

**IT IS SO ORDERED.**

DATED this 1st day of May, 2019.

_____
STACIE F. BECKERMAN
United States Magistrate Judge