IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH J. MUNGER, SR.,

                    Plaintiff,

        v.

CASCADE STEEL ROLLING MILLS, INC.,

                    Defendant.

Case No. 3:18-cv-00970-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Joseph J. Munger, Sr. ("Munger") filed this action against his former employer, Cascade Steel Rolling Mills, Inc. ("Cascade"), alleging violations of the Family Medical Leave Act ("FMLA"), the Oregon Family Leave Act ("OFLA"), and the Oregon Sick Leave Act ("OSLA"). (ECF No. 69.) Now before the Court is Munger's motion for partial summary judgment (ECF No. 72) and Cascade's motion for summary judgment (ECF No. 75). The Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367(a), and all parties have consented to the jurisdiction of a U.S. Magistrate Judge under 28 U.S.C. § 636(c). For the following reasons, the Court grants Cascade's motion for summary judgment, and denies Munger's motion for partial summary judgment.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

### I.   CASCADE'S ATTENDANCE POLICIES

For twenty-three years, Munger worked as a billet crane operator at Cascade's steel manufacturing facility in McMinnville, Oregon. (First Am. Compl. ("FAC") ¶¶ 4, 7-8.) Cascade maintains an attendance policy prescribing how employees must report absences. (Decl. of Anthony D. Kuchulis ("Kuchulis Decl.") Ex. 1, ECF No. 76; Decl. of Benjamin Rosenthal ("Rosenthal Decl.") Ex. 3, ECF No. 74.) The policy includes a "call-off" system that requires employees to contact the security gate and notify Cascade of the reason for an absence. (Kuchulis Decl. Ex. 1, at 4; Rosenthal Decl. Ex. 3, at 4.) An employee who incurs an unexcused absence receives an attendance "incident." (Kuchulis Decl. Ex. 1, at 3; Rosenthal Decl. Ex. 3, at 3.) Under Cascade's progressive discipline policy, an employee may incur up to nine incidents within a twelve-month period before they are terminated. (Kuchulis Decl. Ex. 1, at 10; Rosenthal Decl. Ex. 3, at 10.) Prior to 2015, Cascade had no internal written policy specifically pertaining to FMLA or OFLA medical leave. (Dep. of Teresa Smith ("Smith Dep.") at 22:25-23:25; 26:13-18, ECF No. 74.)

In 2010, Cascade engaged a third-party administrator, FMLASource, to process and approve medical leave requests for its employees. (*Id.* at 7:12-16.) FMLASource followed up with employees directly to certify that the requested absence qualified for the type of leave sought. (*Id.* at 7:14-25.) In November 2015, Cascade updated its medical leave policy to require all employees to contact FMLASource directly to initiate a FMLA claim. (Pl.'s Ex. 6; Kuchulis Decl. Ex. 14.) The updated policy also provided that a doctor's note presented by an employee would not automatically excuse absences from work. (Pl.'s Ex. 10, at 2; Kuchulis Decl. Ex. 15.) According to Cascade, Human Resources mailed the updated FMLA/OFLA policy to employees on November 2, 2015, and posted the policy update in eight departments throughout the

PAGE 2 – OPINION AND ORDER

workplace. (Smith Dep. at 57:13-59:5; Kuchulis Decl. Ex. 17; Pl.'s Ex. 5.) Munger denies

receiving a copy of the policy in the mail. (Munger Dep. at 96:10-21.)

## II.    MUNGER'S ABSENCES

### A.    Fall 2015 Absences

From September 21 through 23, and September 30, 2015, Munger requested FMLA and

OFLA leave related to his ongoing medical condition of idiopathic erythromelalgia, and OFLA

leave to care for his daughter. (FAC ¶ 9; Munger Dep. at 82:8-24; Pl.'s Exs. 32 and 34.) Munger

also sought medical leave for influenza from October 5 through 9, 2015. (Pl.'s Exs. 39-41.)

Although Munger provided Cascade with medical notes regarding these absences, Cascade

determined that Munger had already exhausted his FMLA and OFLA leave for 2015. (Pl.'s Exs.

32, at 2, 34 at 2, and 44; Munger Dep. at 79:11-15; Kuchulis Decl. Exs. 7, 11.)

On October 8, 2015, Cascade sent Munger a letter notifying him that he had "recently

incurred a number of absences that may be subject to the Company's attendance policy."

(Kuchulis Decl. Ex. 12.) In the letter, Cascade advised Munger that providing a doctor's note

"after-the-fact" will not automatically excuse his absence from work, and that Cascade "will

need additional information from your [doctor] to help us determine how the absence will be

treated and our obligations moving forward." (*Id.* at 2.) Cascade assigned Munger attendance

"incidents" for the 2015 absences, and suspended Munger from work on October 25, 2015. (Pl.'s

Ex. 43.)

///

///

///

///

///

### B.    May 2016 Absences

On May 25, 2016, Munger left work early due to severe abdominal pain.[1] (Munger Dep. at 121:3-122:13; 190:10-16.) That same day, Munger went to the hospital, and his attending physician, Dr. Jeffrey Disney ("Dr. Disney"), diagnosed him with "non-obstructive bowel gas pattern with mildly increased stool." (Kuchulis Decl. Ex. 18.) The hospital administered Munger pain medication, provided him with laxatives, and discharged him later that day. (Decl. of Jeffrey Dwane Disney ("Disney Decl.") ¶ 5.) Dr. Disney provided Munger with two doctor's notes indicating that Munger would return to work on May 27, 2016, and suggested that Munger seek follow-up treatment if his symptoms worsened. (Pl.'s Exs. 50, 52; Disney Decl. ¶ 7.)

On May 25, and 26, 2016, Munger called off absent from work, and e-mailed the two doctor's notes to Human Resources ("HR") at Cascade. On May 27, Teresa Smith ("Smith"), Cascade's HR Director, told another HR staff member that if Munger did not contact FMLASource to request protected medical leave by May 31 as required by Cascade's medical leave policy, Munger would receive incidents for each day not covered by FMLA because he had already exhausted his "sick vacation" hours for the year. (Pl.'s Ex. 60.) On May 31, 2016, at approximately 10 a.m., Kimberly Bartlett, a Cascade staff coordinator, sent Munger an e-mail advising him to contact FMLASource by the end of the day or he would receive three attendance incidents. (Pl.'s Ex. 61; Kuchulis Decl. Ex. 21.) Munger did not contact FMLASource to initiate a FMLA claim on May 31, 2016, nor at any time thereafter. (Munger Dep. at 455:16-21.)

///

///

---

[1] Munger worked the graveyard shift beginning on May 24, 2016, and left work in the morning of May 25, 2016. (Munger Dep. at 121:3-122:5.)

## III.    MUNGER'S TERMINATION

On June 1, 2016, FMLASource advised Cascade HR employee Gregory Moore ("Moore") that Munger had not contacted FMLASource to request FMLA leave. (Moore Dep. at 105:5-19.) The next morning, Munger's supervisors, Tom Bacon ("Bacon") and David McKenna ("McKenna"), called Munger into a meeting and presented Munger with a discipline notice indicating that Munger would receive three incidents related to the May 2016 unexcused absences.[2] (Pl.'s Exs. 53-54.) At the meeting, Munger told his supervisors that FMLA and OFLA should cover his absences. (Kuchulis Decl. Ex. 22, at 4:16-25.) Munger confirmed that he had not completed any FMLA paperwork, and he denied receiving the May 31 e-mail from HR advising him to contact FMLASource to submit a FMLA claim. (Id. at 4:18-5:17.) Munger told his supervisors that he had complied with FMLA requirements by calling in and providing his doctor's notes, and that he was not required to provide Cascade with any additional information. (Id. at 8:6-11.) Bacon and McKenna directed Munger to check his e-mail and to follow up with HR regarding his unexcused absences. (Id. at 5:3-5; 9:2-17; Munger Dep. at 148:9-21.)

A few hours later, Cascade called Munger into a second meeting with his supervisors and Moore. Munger insisted on recording the second meeting over the objection of Moore. (Kuchulis Decl. Ex. 23 at 2:9-1.) Moore advised Munger that he was suspended from work pending termination based on his violations of Cascade's attendance policy. (Id. at 2:17-3:8.) After

---

[2] During Munger's deposition on December 15, 2020, Munger revealed for the first time that he had recorded this first June 2, 2016, meeting, without the other meeting participants' knowledge. (See Munger Dep. at 133:12-22.) Munger contends that he recorded the meeting "accidentally," and that Munger's counsel complied with discovery obligations by producing the recording to Cascade once Munger's counsel learned of the recording. (See id. at 133:24-134:4; Pl.'s Opp'n at 16.)

Munger failed to attend a termination meeting scheduled on June 3, 2016, Cascade terminated

Munger's employment effective as of June 2, 2016. (*See* Kuchulis Decl. Ex. 26.)

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On a motion

for summary judgment, the court must view the facts in the light most favorable to the non-

moving party, and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of*

*Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses,

weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks

omitted).

## DISCUSSION

### I.    FMLA AND OFLA CLAIMS

The parties cross move for summary judgment on Munger's FMLA and OFLA claims.

The Court analyzes the claims together, because OFLA claims are to "be construed to the extent

possible in a manner that is consistent with any similar provisions of the [FMLA]." OR. REV.

STAT. § 659A.186(2); *see also Sanders v. City of Newport*, 657 F.3d 772, 783 (9th Cir.

2011) ("In light of these similar statutory and regulatory provisions, the district court properly

applied the same legal standards under FMLA to [Plaintiff's] OFLA claim."); *Benz v. West Linn*

*Paper Co.*, 803 F. Supp. 2d 1231, 1250 (D. Or. 2011) (noting that Oregon courts look to federal

law when interpreting OFLA).

///

### A.    Applicable Law

Under the FMLA, employees are entitled to a total of twelve workweeks of leave during any twelve-month period when "a serious health condition . . . makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The goal of the FMLA is "to balance the demands of the workplace with the needs of families," and "to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b); *see also Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1119 (9th Cir. 2001) (noting that the FMLA was intended "to achieve a balance that reflected the needs of both employees and their employers").

The FMLA provides two theories of recovery: (1) the "interference" or "entitlement" theory, described in 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory, described in 29 U.S.C. § 2615(a)(2). A claim of retaliation for the exercise of FMLA rights "is properly analyzed as an interference claim under section 2615(a)(1)." *Dela Cruz v. Brennan*, No. 19-cv-01140-DMR, 2021 WL 23295, at *3 (N.D. Cal. Jan. 4, 2021) (citing *Bachelder*, 259 F.3d at 1124 ("By their plain meaning, the anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has used FMLA leave. Such action, is instead, covered under § 2615(a)(1), the provision governing 'Interference [with the] Exercise of rights.'")).

### B.    Interference Claim

Munger alleges that Cascade interfered with his right to protected leave under FMLA and OFLA by (1) failing to provide adequate notice of its FMLA procedures, and (2) failing to meet its FMLA obligations upon receiving notice of Munger's need for protected medical leave.

It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the FMLA." 29 U.S.C. § 2615(a)(1). To sustain a

PAGE 7 – OPINION AND ORDER

FMLA interference claim, the employee must establish that: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (quoting *Sanders*, 657 F.3d at 778).

Cascade moves for summary judgment on Munger's interference claim, arguing that Munger has failed to demonstrate that: (1) he suffered from a serious health condition; (2) he gave adequate notice to Cascade of his intention to take leave; or (3) Cascade denied him benefits to which he was entitled.[3] (Def.'s Mot. Summ. J. at 19-23.) Munger cross moves for partial summary judgment on the ground that Cascade failed to fulfill its FMLA obligations, and Cascade's FMLA leave policy is discriminatory. (Pl.'s Mot. Summ. J. at 11-17.)

### 1.    Compliance with Cascade's Medical Leave Policy

Cascade argues that Munger's interference claim fails as a matter of law because he did not comply with Cascade's usual and customary policy for requesting medical leave. (Def.'s Mot. Summ. J. at 21-23.) Specifically, Cascade asserts that Munger failed to: (1) provide Cascade with sufficient medical proof of his need for leave; or (2) contact FMLASource directly to initiate a protected leave claim as required by Cascade's medical leave policy. Munger does

---

[3] Cascade also moves for summary judgment on Munger's FMLA and OFLA claims based on Munger's 2015 absences on the grounds that Munger had exhausted his leave prior to these absences and was therefore ineligible for further leave, and that his claims are time-barred. (Def.'s Mot. Summ. J. at 20, 25-26; Kuchulis Decl. Exs. 8 and 11.) Munger does not present any facts or legal argument regarding those absences, and acknowledged at oral argument that Munger had already exhausted his leave for 2015. Therefore, Cascade is entitled to summary judgment on Munger's FMLA and OFLA claims related to his 2015 absences. Cascade also moves for summary judgment on Munger's OSLA claim based on Munger's May 2016 absences because Munger had exhausted his available paid time off prior to those absences. (Def.'s Mot. Summ. J. at 24.) Munger agrees and withdrew his OSLA claim. (Pl.'s Opp'n at 1.)

not dispute that he failed to provide detailed medical documentation or contact FMLASource about his May 2016 absences. Rather, Munger asserts that he complied with Cascade's usual and customary policy for requesting leave by calling off his absences as required under Cascade's general leave procedures, he did not have actual notice of Cascade's updated medical leave policy, and Cascade's medical leave policy is discriminatory. (Pl.'s Mot. Summ. J. at 11-17.)

### a.    Cascade's Medical Leave Policy

Under the FMLA, "[a]n employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d); *see Rozairo v. Wells Fargo Bank Nat'l Ass'n,* No. 3:17-cv-00012-SI, 2019 WL 3219328, at *6 (D. Or. July 17, 2019) (recognizing that "[t]he FMLA allows employers to require employees to 'comply with the employer's usual and customary notice and procedural requirements for requesting leave.'") (citing 29 C.F.R. § 825.303(c)). "For example, an employer may require employees to call a designated number or a specific individual to request leave." 29 C.F.R. § 825.303(c).

The Ninth Circuit has held that "[n]othing in the FMLA prohibits an employer from disciplining an employee for noncompliance with the company's usual and customary attendance policies." *Shelton v. Boeing Co.,* 702 F. App'x 567, 568 (9th Cir. 2017); *see Allred v. Boise Cascade Wood Prods.,* LLC, No. 1:17-cv-01534-CL, 2018 WL 40402f38, at *5 (D. Or. July 18, 2018) ("Even assuming that Allred properly invoked the FMLA and OFLA for his absence, that issue is somewhat beside the point. The FMLA does not excuse an employee from following the employer's normal call-in procedures, absent an emergency situation[.]").[4]

---

[4] *See also Acker v. Gen. Motors, LLC,* 853 F.3d 784, 789-90 (5th Cir. 2017) ("[A]n employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences, even if the absences that the employee failed to report were protected by the FMLA.") (quoting *Twigg v. Hawker Beechcraft Corp.,* 659 F.3d 987,

The parties disagree about Cascade's usual and customary notice and procedural requirements for requesting FMLA leave. Munger directs the Court to Cascade's policies for requesting leave generally, and argues that Cascade's FMLA leave policy requiring employees to take an additional step to request protected leave discriminates against FMLA claimants. (*See* Pl.'s Mot. Summ. J. at 13-16; *see also* 29 C.F.R. § 825.304(e) ("[An] employer may take appropriate action under its internal rules and procedures for failure to follow its usual and customary notification rules . . . as long as the actions are taken in a manner that does not discriminate against employees taking FMLA leave.") Cascade responds that the Ninth Circuit has endorsed policies like Cascade's that require employees seeking FMLA leave to contact third-party administrators.

Cascade is correct that the Ninth Circuit and its district courts have held that an employer's requirement that an employee contact a third-party administrator to request FMLA leave does not violate the FMLA. *See, e.g.*, *Duran v. Stock Bldg. Supply W., LLC*, 672 F. App'x 777, 778 (9th Cir. 2017) ("By declining to fill out the [leave of absence] form or apply for leave through [defendant's third-party administrator], [the plaintiff] did not 'comply with the employer's usual and customary notice and procedural requirements for requesting leave,' 29 C.F.R. § 825.303(c), and he cannot now complain that his leave should have been CFRA-protected."); *Rozairo*, 2019 WL 3219328, at *6 ("There is no genuine dispute of fact that (1) Defendant's policy required Plaintiff to contact [a third party administrator], (2) Plaintiff knew that contacting [a third party administrator] was part of the procedure for taking protected leave, and (3) Plaintiff failed to contact [the third party administrator] at any time between commencing

---

1008-09 (10th Cir. 2011); *Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008) ("Employers who enforce [call-in] policies by firing employees on FMLA leave for noncompliance do not violate the FMLA.").

his medical leave . . . and returning to work . . . . Thus, there is no genuine dispute of fact that Plaintiff failed to provide Wells Fargo with notice of his intent to take protected leave as required by Wells Fargo's policy."); *Randle v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 171 F. Supp. 3d 1084, 1091 (D. Or. 2016) (holding that the plaintiff could not establish FMLA interference claim where the plaintiff's FMLA "request was delayed only because she did not comply with the proper policies and procedures to request leave" requiring her to request leave through a third-party administrator).[5]

Munger has identified only one case holding that requiring an additional step to take FMLA leave is discriminatory. *See Moore v. GPS Hosp. Partners IV, LLC*, 383 F. Supp. 3d 1293, 1299-1301 (S.D. Ala. 2019). In *Moore*, the district court held that FMLA regulations "[do] not permit employers to deny leave based on a failure to comply with more stringent notice and procedural requirements applicable to FMLA requests but not to other forms of leave." *Id.* at 1301. The court reasoned that "[t]he agency's use of 'leave' rather than 'FMLA leave'" in

---

[5] Courts outside the Ninth Circuit have held similarly. *See Acker*, 853 F.3d at 789-90 (affirming summary judgment on FMLA interference and retaliation claims where the plaintiff failed timely to comply with employer's call-in policy that required employees to make one phone call to request sick leave, but two phone calls to request FMLA leave, and concluding that an employer could deny FMLA leave to an employee who failed to comply with that policy); *Perry v. Am. Red Cross Blood Servs.*, 651 F. App'x 317, 328 (6th Cir. 2016) (holding that the plaintiff was not denied benefits to which she was entitled where she failed to report listed absences as FMLA leave to FMLA administrator); *Soutner v. Penn St. Health*, No. 1:18-CV-271, 2020 WL 1531323, at *3 (M.D. Pa. Mar. 31, 2020) (finding the plaintiff failed to comply with her employer's "usual notice and procedural requirements" when she failed to designate her FMLA leave with the third-party administrator); *Reese v. Zimmer Prod., Inc.*, No. 1:17-cv-105-TLS, 2018 WL 4510453, at *4 (N.D. Ind. Sept. 29, 2018) (holding that an employee's failure to contact the employer's FMLA administrator to initiate leave request placed employer "within its right to deny leave"); *Int'l Brotherhood of Elec. Workers Loc. 1600 v. PPL Elec. Util. Corp.*, Nos. 5:16-cv-04675, 5:16-cv-04676, 2017 WL 6547138, at *1 (E.D. Pa. 2017) ("If an employee is using FMLA leave . . . she must make a three-to-five minute phone call to a third-party administrator in addition to calling her supervisor. This Court must decide whether this arrangement violates the FMLA. It concludes that it does not.").

Sections 825.302 and 825.303 reflected an intention that "the usual and customary requirements an employer may enforce in the FMLA context are those generally applicable to other forms of leave." *Id.* at 1300. As relevant here, the *Moore* court suggested that adopting an additional requirement for employees seeking FMLA leave may discriminate against those employees. *Id.*

    *Moore* is non-binding on this Court, but in any event, the Court disagrees with the *Moore* analysis because the FMLA regulations do not prohibit different procedures for providing notice of FMLA and non-FMLA leave. As noted, Section 825.303(c) provides, in relevant part: "If an employee does not comply with the employer's usual notice and procedural requirements . . . FMLA-protected leave may be delayed or denied." 29 C.F.R. § 825.303(c). Munger suggests that the Court should interpret this rule as prohibiting an employer from denying FMLA leave if the employee complies with the employer's usual (i.e., non-FMLA) notice policies, but this inference is not supported by the text of the regulation. Contrary to Munger's assertions, nothing in the text of the regulation precludes an employer from requiring additional procedures for giving notice of FMLA leave. *See Int'l Brotherhood of Elec. Workers Loc. 1600*, 2017 WL 6547138, at *4-5 ("[T]he conclusion that 29 C.F.R. § 825.303(c) contemplates employers allowing their employees to use the same procedures for non-FMLA and FMLA leave does not mean that Section 825.303(c) precludes separate procedures for providing notice of FMLA leave"); *id.* (explaining that "the 'usual and customary' requirements act as a floor, not a ceiling," and holding "[the defendant's] FMLA policy does not run afoul of the FMLA simply because it requires employees to take one more step than they do to give notice of sick leave"); *see also Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013) (concluding that "an employer may impose and enforce its own internal notice requirements, even if those

requirements go beyond the bare minimum that would generally be sufficient under the FMLA to constitute proper notice").

Consistent with Ninth Circuit authority, the Court concludes that Cascade's medical leave policy requiring FMLA claimants to contact a third-party administrator to submit a FMLA claim does not violate the FMLA.

### b.    Cascade's Notice to Munger of its Medical Leave Policy

Munger argues that he was not required to comply with Cascade's medical leave policy because Cascade failed to provide him with actual notice of its requirement that employees contact FMLASource to submit a FMLA claim. (Pl.'s Mot. Summ. J. at 12.)

"The failure to notify an employee of her rights under the FMLA can constitute interference if it affects the employee's rights under FMLA." *Liston v. Nevada ex rel. its Dep't of Bus. & Indus.*, 311 F. App'x 1000, 1002 (9th Cir. 2009) (citing *Xin Liu v. Amway*, 347 F.3d 1125, 1134-35 (9th Cir. 2003)). "Inadequate notice amounts to interference if it 'causes an employee to unwittingly forfeit the protection of the FMLA.'" *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1220 (S.D. Cal. 1998) (citation omitted). Under the FMLA, "it must be clear that the employee had actual notice of the FMLA notice requirements." 29 C.F.R. § 825.304(a). This condition is satisfied by "the employer's proper posting of the required notice at the worksite where the employee is employed and the employer's provision of the required notice in either an employee handbook or employee distribution." *Id.*

Cascade argues that it provided Munger with adequate notice of its FMLA and OFLA policies by: (1) mailing a summary of its updated policies to all employees (Kuchulis Decl. Ex. 17; Pl.'s Ex. 5): (2) posting notices of the policy throughout the workplace (Smith Dep. at 57:13-59:5); (3) sending Munger an e-mail on May 31, 2016, stating that "you will need to contact FMLASource by the end of the day today or you will receive 3 attendance incidents per the

attendance policy" (Kuchulis Decl. Ex. 21); and (4) instructing Munger to check his e-mail and follow up with HR regarding his absences during a meeting on June 2, 2016 (*id.*, Ex. 22 at 9:2-3). Munger responds that: (1) he never received Cascade's updated policy in the mail; (2) he was unaware that Cascade had implemented the new policy, and (3) he did not review the May 31, 2016, e-mail until after Cascade had already made its termination decision. (Pl.'s Mot. Summ. J. at 6; Pl.'s Opp'n at 11; Munger Dep. at 96:10-21; 148:22-149:2; 460:10-21.)

The record before the Court demonstrates that although Cascade did not include the updated medical leave policy in its employee handbook, it posted notice of the updated medical leave policy at the worksite where Munger was employed, and provided notice of the new policy by distributing it to employees by mail. That was sufficient notice under the FMLA. *See* 29 C.F.R. § 825.304(a) ("[I]t must be clear that the employee had actual notice of the FMLA notice requirements. This condition would be satisfied by the employer's proper posting of the required notice at the worksite where the employee is employed and the employer's provision of the required notice in either an employee handbook *or* employee distribution[.]") (emphasis added). Although Munger alleges he never received a copy of the updated policy, he does not credibly dispute Cascade's evidence that HR mailed the updated policy to employees in November 2015, and posted the policy update in eight departments throughout the workplace. (*See* Smith Dep. at 57:13-59:5; Kuchulis Decl. Ex. 17; Pl.'s Ex. 5.)

Even setting aside Cascade's posting and distribution of the updated policy prior to Munger's May 2016 absences, the undisputed evidence also demonstrates that Munger was on actual notice of the policy's requirements prior to his termination but he inexplicably refused to comply with the policy. On May 31, 2016, at 10:11 a.m., Cascade sent Munger an e-mail advising him to contact FMLASource by the end of the day to initiate a FMLA leave request or

he would receive three attendance incidents for his May absences. (Pl.'s Ex. 61; Kuchulis Decl. Ex. 21.) It is undisputed that at approximately 6 a.m. on June 2, 2016, Munger's supervisors, Bacon and McKenna, called Munger into a meeting and presented him with a discipline notice advising him of three incidents related to his May 2016 unexcused absences. (Pl.'s Exs. 53-54; Kuchulis Decl. Ex. 22., at 4:10-15.) When Bacon instructed Munger to follow up with HR regarding his obligations under Cascade's leave policy, Munger refused:

Mr. Munger:     Well, you're disciplining me for using FMLA and OFLA, so that's a problem.

Mr. Bacon:      Not necessarily. We're giving you these papers to notify you that there's an issue that you need to resolve, and - -

Mr. Munger:     How do I resolve it?

Mr. Bacon:      Talk with Teresa [Smith] and find out what your obligations are.

Mr. Munger:     My obligations by the statute were to call off.

Mr. Bacon:      So just - - you can just phone in and say FMLA without any - - filing the paperwork.

Mr. Munger:     You don't even have to say FMLA. It's posted on your wall in the hallway. It says call in.

Mr. Bacon:      Let's see. This is human resources you have to deal with about it.

Mr. Munger:     I don't have to deal with anything. I go back to my job until someone tells me to go away.

Id. at 8:22-9:17. It is also undisputed that Munger did not contact HR or FMLASource when he left the 6 a.m. meeting on June 2. At approximately 10 a.m. that same day, Munger was called into a second meeting, at which Moore suspended him pending termination for violation of Cascade's attendance policy. (Kuchulis Decl. Ex. 23, at 2:17-23.) Moore advised Munger that Cascade's policy required employees to contact FMLASource to initiate a FMLA leave request, and Munger again shared his objections, insisting that contacting FMLASource was not his responsibility. (See id. at 4:23-5:6, "Mr. Moore: Did you notify FMLASource? Mr. Munger: I'm

PAGE 15 – OPINION AND ORDER

not required to. Mr. Moore: Yes, you are. Mr. Munger: That's HR's job.") Consistent with his stated refusals at the meetings, Munger did not contact FMLASource on June 2. After Munger failed to attend a termination meeting scheduled on June 3, 2016, Cascade terminated Munger's employment effective as of June 2, 2016. (*See* Kuchulis Decl. Ex. 26.)

Viewing this evidence in the light most favorable to Munger, the Court concludes that no reasonable juror could find that Cascade failed to provide Munger with actual notice of his obligations under Cascade's medical leave policy. Even accepting Munger's allegations as true that he did not receive the November 2015 mailing about the updated policy, did not read the on-site postings about the updated policy, and did not read the May 31 e-mail until after the second meeting on June 2, there is no dispute that, by the end of the first meeting on June 2, Munger was aware that he had not satisfied Cascade's medical leave policy with respect to his May 2016 absences. In his own recording of that meeting, it is clear that his supervisors informed him that he must check his e-mail and contact HR to complete his obligations under Cascade's leave policy, but Munger stated his refusal to comply with the policy and thereafter refused to comply.[6] *See* *Shelton*, 702 F. App'x at 568 (concluding that the plaintiff failed to establish that he complied with Boeing's usual and customary policy for requesting leave because, despite possible inconsistencies between the company's general leave of absence policies and FMLA policies, "there is no question that [the plaintiff] knew he needed to report his absences to his manager" because "[h]e was reminded on multiple occasions").

---

[6] Munger acknowledged at his deposition that he was aware of Cascade's policy that employees must notify FMLASource to initiate a FMLA or OFLA leave request. (Munger Dep. at 457:20-458:15, "Q: And you understood by the time of May 2016 that you wouldn't get information or approval for OFLA or FMLA protected leave until you had contacted FMLASource, right? A: I think that's the company's position. . . . I understand that they do that. Q: Okay. So you understood the company wanted people to contact FMLASource to initiate a claim for FMLA or for OFLA, right? A: Yeah, they've been wanting it for a lot of years.").

Cascade provided Munger with the information necessary to initiate a FMLA claim via

FMLASource, but Munger refused to do so. Thus, Munger cannot demonstrate that he "forfeited

FMLA rights and obligations as a result of a lack of information provided by the employer."

*Mora*, 16 F. Supp. 2d at 1220. Rather, he forfeited his FMLA rights as a result of his own refusal

to follow the rules.

The Court concludes that Cascade's usual and customary policy for requesting medical

leave was lawful and that Munger had sufficient notice of the policy, and therefore Munger was

required to comply with the policy to request FMLA leave.

### c.    Munger's Request for Medical Leave

Munger argues that he provided sufficient information to inform Cascade that he was

requesting FMLA leave for a serious health condition, and that Cascade failed to fulfill its

FMLA obligations in response to his request for leave. The Court disagrees.

The FMLA requires that an employee must "provide sufficient information for an

employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R.

§ 825.303(b). When the need for leave is unforeseeable, an employee must provide notice "as

soon as practicable." 29 C.F.R. § 825.303(a). "Whether the content of the notice provided by an

employee is sufficient depends on the specific facts and circumstances of the particular case."

*Melani*, 2019 WL 7879951, at *20. "An employee is not required to explicitly invoke FMLA's

protections, but need only state that leave is needed for a qualifying reason." *Id.* (citing

*Bachelder*, 259 F.3d at 1130). Generally, "the critical test for substantively-sufficient notice is

whether the information that the employee conveyed to the employer was reasonably adequate to

apprise the employer of the employee's request to take leave for a serious health condition that

rendered him unable to perform his job." *Nelson v. Fiskars Brands, Inc.*, No. 3:14-cv-00685-SB,

2015 WL 5566454, at *13 (D. Or. Sept. 13, 2015) (quoting *Sarnowski v. Air Brooke Limousine,*

PAGE 17 – OPINION AND ORDER

*Inc.*, 510 F.3d 398, 402 (3d Cir. 2007), and *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004)). Once this standard is met, it is the employer's responsibility to "inquire further to ascertain whether the paid leave is potentially FMLA-qualifying." *Mora*, 16 F. Supp. 2d at 1220-21.

Munger has failed to establish that he provided Cascade with sufficient notice to trigger the FMLA's protections. Although Munger provided Cascade with two doctor's notes excusing him from work through May 26, the notes did not contain information regarding the severity or duration of Munger's condition, nor whether Munger's treating doctor recommended follow-up treatment. Indeed, Dr. Disney's notes and treatment plan from Munger's May 25 hospital visit do not mention work limitations or restrictions. *See Flores v. Murphy Co.*, No. 1:12-cv-2156-CL, 2014 WL 584553, at *4 (D. Or. Feb. 12, 2014) ("Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act."); *see also De la Rama v. Ill. Dep't of Hum. Servs.*, 541 F.3d 681, 687 (7th Cir. 2009) ("Calling in sick without providing additional information does not provide sufficient notice under the FMLA. This is true even if the employee provides her employer with a doctor's note if the note does not convey the seriousness of her medical condition."). Thus, the information Munger conveyed to Cascade was not reasonably adequate to apprise Cascade of his request to take leave for a serious health condition that rendered him unable to perform his job.

Munger also argues that by identifying FMLA and OFLA as the reason for calling off his May 26 and 27 absences, the burden shifted to Cascade to inquire further as to why Munger was seeking protected leave. Although an "employee need not expressly assert rights under the FMLA or even mention the FMLA," merely referencing FMLA without providing information as to whether the medical condition is FMLA-qualifying is insufficient to trigger an employer's

obligations under the statute. *See Ellis v. Vial Fotheringham LLP*, No. 3:16-cv-01945-AC, 2019 WL 1553676, at *13 (D. Or. Feb. 1, 2019) ("Ellis is correct that she does not have to explicitly invoke FMLA, but she must at least 'state that leave is needed' for a FMLA-qualifying reason. Ellis has provided no facts, other than a conflicting statement in her declaration, to rebut her own testimony that she merely informed [her supervisor] she would not make it in to work[.]"); *see also De la Rama*, 541 F.3d at 687 ("Although an employee is not required to refer to the FMLA in order to give notice of her intent to take FMLA leave, 'the notice must succeed in alerting the employer to the seriousness of the health condition.'") (citation omitted).[7]

In any event, Cascade did inquire further in response to Munger's call-off, directing Munger to comply with its medical leave policy by submitting the appropriate FMLA leave documentation to FMLASource. Munger refused to do so, thereby failing to comply with Cascade's usual and customary policy for requesting FMLA leave.

### d.    Summary

The Court finds that Cascade's medical leave policy requiring that employees file FMLA claims with a third party administrator is not discriminatory under the FMLA, and the record demonstrates that Munger had sufficient notice of Cascade's policy. Accordingly, Munger was required to follow Cascade's usual and customary policy to request FMLA leave, but he refused to do so. As such, Munger cannot satisfy the fourth element of his FMLA/OFLA interference

---

[7] Indeed, Munger acknowledges that he understood that simply referencing FMLA or OFLA leave when reporting an absence does not notify an employer that he qualifies for leave. (*See* Munger Dep. at 130:7-22, "Q. But it's – you do understand that – and you testified to this a minute ago – that someone simply saying FMLA/OFLA does not entitle them to protected leave. They must have a qualifying basis for taking the leave, correct? A. Exactly, yes. Q. All right. So without more, it's impossible to know if someone's – without more information than simply FMLA/OFLA, it's impossible to know whether someone actually qualifies for the leave they're seeking. A. Yes.").

claim requiring that he provide Cascade with sufficient notice of his intent to take FMLA/OFLA leave as required by Cascade's policy. *See Rozairo*, 2019 WL 3219328, at *6 (entering summary judgment for employer where "there is no genuine dispute of fact that Plaintiff failed to provide [the employer] with notice of his intent to take protected leave as required by [the employer's] policy" where the policy required the plaintiff to contact a third party administrator but the plaintiff failed to do so). Accordingly, the Court grants Cascade's motion for summary judgment and denies Munger's motion for partial summary judgment on Munger's interference claim.[8]

### C.    Retaliation Claim

The parties also cross move for summary judgment on Munger's retaliation claim. Employers are prohibited from "discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220. To establish a retaliation claim, a plaintiff must show that "1) []he took or requested protected leave; 2) the employer subjected [him] to an adverse employment action; and 3) the requesting or taking of protected leave was a 'negative factor' in the adverse employment decision." *Ellis*, 2019 WL 1553676, at *14 (citing *Bachelder*, 259 F.3d at 1125 and 29 C.F.R. § 825.220(c)).

Munger's retaliation claim fails for the same reason as his interference claim. As discussed above, Munger has failed to demonstrate that he complied with Cascade's usual and customary notice and procedural requirements for requesting medical leave, and he is therefore unable to prove the first element of his claim that he requested protected leave. Instead, the

---

[8] In light of the Court's finding that Munger failed to establish the fourth element of his interference claim, the Court declines to address the third and fifth elements of the claim. *See Greer v. Cleveland Clinic Health Sys.-E. Region*, 503 F. App'x 422, 427 (6th Cir. 2012) ("Greer fails the fourth prong of his prima facie case for FMLA interference, precluding the need to address the fifth prong."); *Nelson*, 2015 WL 5566454, at *15 (concluding that the plaintiff failed to establish the third and fourth elements of her interference claim and therefore "the court need not address the fifth prong of her interference claim").

PAGE 20 – OPINION AND ORDER

record supports a finding that Munger refused properly to request FMLA leave, and Cascade

terminated him as a result because Munger had acquired too many unexcused absences.

Accordingly, Cascade is entitled to summary judgment on Munger's FMLA retaliation claim.

*See Ellis*, 2019 WL 1553676, at *14 ("Because Ellis has failed to provide sufficient facts to

establish that she requested FMLA leave and that such a request was a 'significant factor' in her

termination, [the defendant] is entitled to summary judgment on Ellis's FMLA retaliation

claim.").[9]

## CONCLUSION

For the reasons stated, the Court GRANTS Cascade's motion for summary judgment

(ECF No. 75) and DENIES Munger's motion for partial summary judgment (ECF No. 72).

DATED this 17th day of June, 2021.

*Stacie F. Beckerman*
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[9] Both parties raised evidentiary objections in response to the motions for summary judgment. Munger objects to: (1) the inclusion of a Bureau of Labor and Industries dismissal memorandum; (2) assigning any weight to the underlying arbitration determination; and (3) any reference to pre-2015 events. (Pl.'s Opp'n at 1-3.) Cascade moves to strike the declaration of Munger's treating physician, Dr. Andre Barkhuizen. (Def.'s Sur-Reply at 2.) Because the Court does not rely on this evidence herein, the Court denies the objections as moot. *See Gessele v. Jack in the Box, Inc.*, 6 F. Supp. 3d 1141, 1167 (D. Or. 2014) ("Because the Court did not rely on the evidence in the Parker Declaration in deciding Defendant's Motion for Summary Judgment, the Court denies as moot Plaintiffs' Motion to Strike."); *Perez-Denison v. Kaiser Found. Health Plan of the Nw.*, 868 F. Supp. 2d 1065, 1089 (D. Or. 2012) ("None of the evidence moved against was relied upon in evaluating Denison's invasion of privacy claim against Kaiser. Kaiser's evidentiary objections should also be denied as moot on this ground.")